## SMITH BROS. PROPERTIES CO. v. ÆTNA LIFE INS. CO.

### A. B. FRANK CO. v. SAME.

### Nos. 6697, 6698.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1932.

Rehearing Denied Jan. 10, 1933.

In case No. 6697:

J. D. Dodson and W. F. Ezell, both of San Antonio, Tex., for appellant.

R. J. Boyle and J. D. Wheeler, both of San Antonio, Tex., for appellee.

In case No. 6698:

J. D. Dodson and W. F. Ezell, both of San Antonio, Tex., for appellant.

S. J. Brooks, of San Antonio, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCH-ESON, Circuit Judges.

BRYAN, Circuit Judge.

These appeals, based as they are upon similar questions of fact and of law, may be disposed of in one opinion.

The Ætna Life Insurance Company issued two policies insuring the life of John Henry Smith; one dated June 28, 1929, for $130,500, naming Smith Brothers Properties Company as beneficiary, and the other dated June 12, 1929, for $19,500, naming the A. B. Frank Company as beneficiary. Each policy contained a two-year incontestable clause, and provided that if the insured should commit suicide within two years from the date thereof the company would be liable only for an amount equal to the premiums that had been paid. The applications for the policies were dated May 24, 1929; and, among other things, the applicant was asked to state: "Plan (Describe as in Rate Book and state whether Participating or Non-Participating)," and replied that the larger policy should be, "Non-Participating Life," and the smaller one, "Non-Participating Modified Life Term 5 yrs." For some time prior to June 1, 1929, the policies issued by the company contained a one-year incontestable clause, and a one-year suicide clause. Smith committed suicide more than one year but less than two years after each policy was issued. Within a few days less than two years from the date of the policy first issued, the insurance company filed separate bills to cancel both policies, and tendered into court the premiums it had received. It did not wait for the incontestable period to expire for fear that its defense of suicide would be cut off because it had failed within that period to contest the policies. But whether its fears were well founded [Mack v. Conn. Insurance Co. (C. C. A.) 12 F.(2d) 416], or whether causes of equity jurisdiction were asserted, are matters which become immaterial, since the beneficiary in each case filed a cross-bill to reform the policy by substituting incontestable and suicide clauses of one year instead of two years, and upon such reformation being made to recover judgment for the face of the policy. Upon final hearings or-

ders were entered denying the relief prayed in the cross-bills, but judgment went against the insurance company in each case for the amounts it had received as premiums. The beneficiaries appeal, and contend that, as Smith's applications called for a plan of insurance which was described in the rate book, and as there appeared in the rate book which was in use prior to June, 1929, a form of policy which contained a one-year suicide clause, the insurance company became bound to include such a clause in the policies issued on Smith's life pursuant to his applications, and its failure to do so amounted to a fraud upon their rights.

Smith, the insured, was a director of the Frank Company and president of the Smith Brothers Company, two concerns which were engaged in business in San Antonio, Tex. Before the policies in suit were issued, Houston, the general manager of the Frank Company, who had under consideration the advisability of taking out insurance on the lives of the directors and officers of that company, entered into negotiations for such insurance with the Ætna's general agent at San Antonio, Elmer Abbey, and his soliciting agents, Burnett and Martin. Smith preferred to deal with Martin, whom he had known for many years, and through whom in 1923 he had obtained a policy which contained a one-year suicide clause, though nothing was said about that clause when Martin took his applications in May, 1929, for the policies in suit. In April, 1929, the insurance company sent a circular to its general agents, stating that beginning June 1, 1929, its policies would provide a two-year instead of a one-year suicide clause. Abbey received one of these circulars, but Martin testified that the information contained therein was not communicated to him, and that he did not know of any contemplated change in the form of policies that were being or would be issued; that he had discussed with Smith the general form of the policies issued by the Ætna, and had submitted specimens of forms thereof to Smith when the latter had taken out insurance on previous occasions.

Parol proof of mutual mistake in a written contract, where mistake is denied, is required to be "of the clearest and most satisfactory character." Snell v. Atlantic F. & M. Insurance Co., 98 U. S. 85, 90, 25 L. Ed. 52. The whole case for appellants is built up on the language above quoted from the applications as to the "plan" upon which the policies were to be issued. That language in our opinion refers only to the kind of in-

surance policy the applicant desired, such as ordinary life, 20 annual premiums, endowment, term insurance, etc., as described in the rate book, and whether the kind of insurance applied for should be participating or nonparticipating. The plan or kind of insurance would be the same whether the policy provided for a one-year or a two-year suicide clause. The suicide clause had nothing to do with the kind of insurance, or whether it should be participating or nonparticipating. The only object in referring to the rate book was to identify the kind of policy desired by the applicant. It follows that the insurance company by requiring the plan or kind of insurance to be stated as it was described in the rate book was not committing itself to the issuance of a policy which should contain any particular clause on the subject of suicide. There was no semblance of fraud perpetrated by the insurance company in stipulating for a two-year instead of a one-year suicide clause. That clause had never been the subject of discussion between the soliciting agent, on the one hand, and the insured or either beneficiary on the other. And so it cannot be said that Smith or either appellant relied upon it in the slightest degree; but even if it could be so asserted, it is made clear by the circular that the insurance company intended that all its policies issued, as these policies were, after the first of June, 1929, should contain two-year suicide clauses. It therefore appears that, since both parties to the contract were not mistaken, there could not have been a mutual mistake; and so reformation on that ground was properly refused. There being neither fraud nor mutual mistake, our conclusion is that there was no error in refusing to reform the policies.

The decrees appealed from are, and each of them is, affirmed.